Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

FILED BY _WCC_ D.C.

DEC 09 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. — MIAMI

DANIEL ADAMS,

    Plaintiff,

v.

STATE ATTORNEY OF BROWARD COUNTY,

    Defendant

Case No. 0:25-cv-62084-EA

Hon. Ed Artau

FIRST AMENDED VERIFIED
COMPLAINT FOR EMERGENCY
EQUITABLE RELIEF

This is a 42 U.S.C. § 1983 civil rights action brought by pro se pretrial defendant Daniel Adams ("Plaintiff"), who is awaiting trial within the Broward County Main Jail, at which the death penalty will be sought and currently scheduled to begin on January 7, 2026. He comes before this Honorable Court to complain that he will suffer great, immediate, and irreparable harm if it is allowed to proceed as currently contemplated with unconstitutionally conflicted prosecutors, and that he is incapable of having this constitutional issue adjudicated by the state court due to unambiguous law — i.e. the Legsy v. State, 846 So.2d 472 (Fla. 2003) doctrine, its progeny, and related cases — acting as a complete procedural bar. Plaintiff seeks to remedy this structural error by obtaining an injunction ordering that the State Attorney of Broward County recuse and disqualify his agent, himself, and his office from continuing his prosecution under Florida law.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3).

2.      Venue is proper as all events relevant to this complaint occurred within the Southern District of Florida.

## THE PARTIES

3.      Plaintiff, DANIEL ADAMS, is a pretrial detainee in the custody of the Broward County Sheriff whose death penalty trial is scheduled to begin on January 7, 2026. He will be raising a self-defense claim as he was kidnapped, robbed, and almost murdered by an ex-con Haitian con man and his cousin in February of 2020. The State's star witness lied to Davie Police by claiming that it was Plaintiff who killed the former for no reason at all before kidnapping the latter in the hope of fraudulently obtaining a crime victim visa after overstaying his previously-issued visa. Plaintiff has been looking forward to being exonerated for almost six years and he has brought this action to ensure that his trial is a fair one as guaranteed by the Fourteenth Amendment.

4.      Defendant, STATE ATTORNEY OF BROWARD COUNTY, is prosecuting Plaintiff and he and his agents' alleged misconduct and refusal to engage Plaintiff with a dialogue over the facts alleged in this complaint has resulted in these proceedings being commenced.

## FACTUAL ALLEGATIONS

5. Plaintiff was arrested on February 24, 2020, and booked into the Broward County Main Jail (the "Jail"). He was appointed the services of the Broward County Public Defender shortly thereafter; Assistant Public Defenders ("PD") Phyllis Diane Cook and Ruby Green were assigned to the case, *State v. Adams, No. 20-002406 CF10A, Fla. 17th Cir. Ct.*, wherein an indictment for the alleged crimes of First-Degree Murder and Kidnapping was filed by Assistant State Attorney ("ASA") Pascale Achille on or about March 12, 2020. Ruby Green would be replaced by PD Diane Yvette Trawick following the former's failed bid to be elected to the Office of the Public Defender in late 2020.

6. PD Cook and Trawick would demonstrate incompetence, lack of candor, inability to communicate, an absence of diligence, and committed other misconduct, such as violating Plaintiff's attorney-client privilege in the course of their 39 months of being Plaintiff's attorneys of record. This conduct led Plaintiff to believe that the only possible result at trial would be a wrongful conviction. Their representations to him that he should expect Judge Elizabeth Scherer to imminently schedule his case for trial beginning in December of 2022, and that he was "lucky" when she failed to do so reasonably caused Plaintiff to believe that time was of the essence in obtaining new counsel following admissions by both of them that they had done "nothing" to prepare his case and defense for trial.

7. Plaintiff had a reasonable belief that he would not be provided with the cold neutrality that the law requires of judges following Judge Scherer's handling of the Nikolas Cruz murder trial, which included her hugging prosecutors

in open court whilst wearing her judicial robe as she commiserated with the State after she and they had failed to obtain the death penalty for the defendant. This belief – bolstered by the Florida Judicial Qualifications Commission's strong reprimand for such actions – also led Plaintiff to believe that he would be denied a respectfully submitted Motion for the Substitution of Counsel due to such transparent bias for prosecutors. This caused Plaintiff to engage in self-help by having his former Mitigation specialist, Professor Hannah Gorman of Florida International University, unknowingly convey drugs ("paper dope") into the possession of V.K. nonprofit Amicus volunteer Tara Pooni, who was an intern for PD Cook and boarding with her at the time. Pooni opened the envelope and piece of paper containing the synthetic-cannabanoid-laced paper at PD Cook's home, thus causing the latter to become a witness to a crime committed by him.

8.      PD Cook and Plaintiff's in-house investigator from the PD's office, Charles Stack (an ex-undercover cop who boasted of his "extensive law enforcement contacts" to Plaintiff), visited him in the jail on May 23, 2023, to strongly voice their displeasure with Plaintiff's conveying drugs to Pooni through Gorman four days after the fact on May 23, 2023. It was at that time that Cook stated that Stack was in possession of the envelope which contained the drugs conveyed to Pooni and Stack's acknowledgment that this was correct. PD Cook filed a Motion to Withdraw immediately after leaving the visitation with Plaintiff at the jail. It would be heard and reluctantly granted by Judge Scherer two days later after PD Cook lied as to the nature of the conflict that had arisen between Plaintiff and the PDs.

9.      On May 1, 2023, Plaintiff was informed by jail staff that he was being

placed in Administrative Segregation. Two officers from the Broward Sheriff's Office's law enforcement division appeared at the jail to interrogate Plaintiff about sending an "attorney" a letter just before his person, property, and jail cell were all subjected to searches by Department of Detention Staff. Plaintiff's belief that his former PDs had reported him to the police for the distribution of paper dope to Pooni' made these events unremarkable.

10.     Detective Enock Jonnalus filed a complaint against Plaintiff with the Broward County Circuit Court on June 13, 2023, thus commencing State v. Adams, No. 23-006417-CF10A, Fla. 17th Cir. Ct. Plaintiff was haled before Magistrate Chris Brown the following day for his first appearance. It was at that time that Plaintiff made demand for a copy of the complaint that had been filed in order to learn the nature of the allegations against him.

## Something Completely Unexpected

11.     On June 1, 2023, ASA Achille "discovered" an "envelope" (a piece of copy paper folded to the size of a letter envelope and stapled) on her desk that had an unidentified individual's handwriting in blue and black ink on its exterior. The "envelope" was made out in such a way as to lead one to believe that it was sent by Plaintiff through the Broward County Courthouse's internal mail system. Within the "envelope" was another piece of paper that had been folded in half three times. It bore Plaintiff's handwriting in black ink, read "Open Carefully Over [A] Flat Surface," and was sealed with a sticker that is placed on Plaintiff's special diet trays at meal time within the jail. Within this piece of paper was a white powder substance that allegedly caused ASA Achille to fear for her safety.

She proceeded to alert personnel with the Broward Sheriff's Office's Court Division and emergency services responded. It was subsequently determined that the white powder "discovered" by ASA Achille was composed of cream of wheat and sulfuric acid.

12.    Jail staff would subsequently "discover" the same white powder "discovered" by ASA Achille within his jail cell in the short amount of time that he was removed from his housing unit at the time of the search. Detective Jonnalus would also purportedly "trick" Plaintiff into revealing information he otherwise shouldn't have had during his brief interrogation of Plaintiff.

## A Successful Malicious Prosecution

13.    The entirety of all evidence referenced by Det. Jonnalus in his complaint's probable cause affidavit, including the statements attributed to Plaintiff, were fabricated by agents of the Broward County Public Defender, Sheriff, and, upon information and belief, the Defendant.

14.    The thrice-folded paper containing the cream of wheat and sulfuric acid "discovered" by ASA Achille was the paper used by Plaintiff to conceal and hold the small pieces of paper dope to PD intern Poon. It was in the possession of Charles Stack on May 23, 2023 – only nine days before it was "discovered" by ASA Achille.

15.    Plaintiff did not mail or otherwise convey a "hoax weapon of mass destruction" onto ASA Achille's desk in any manner, capacity, or third persons.

16.     Upon information and belief, it is alleged that Charles Stack managed to convince Sergeant Nguyen, who supervised the search of Plaintiff's jail cell on June 1, 2023, to plant the same white powder "discovered" by Achille in the jail cell at the time of the said search and to utilize his authority to have Plaintiff unreasonably subjected to a stripsearch, visual body cavity inspection, and x-ray imaging as a pretext and to provide cover for the fabrication of the evidence. Stack utilized his "extensive law enforcement contacts" to identify a suitable agent to effect the fabrication of this evidence against Plaintiff.

17.     Upon information and belief, it is alleged that PD Trawick leveraged her "very good friendship" with ASA Achille – which she previously boasted of to Plaintiff in the context of hoping to obtain a plea deal – to convince her to become a willing victim to the crime that Plaintiff was framed for, falsely accuse Plaintiff of the same, and cause him unimaginable harm.

13.     Upon information and belief, it is alleged that PD Cook lied to Judge Scherer as to the true nature of the conflict that had developed between Plaintiff and her office so as to provide cover for the conspiracy to maliciously prosecute Plaintiff to proceed forward. If the police had become involved at that time they would have seized the envelope in the possession of Investigator Stack as evidence for a prosecution and deprived the conspirators of the paper with Plaintiff's handwriting and special diet tray sticker that was "discovered" by ASA Achille.

1⁴.     Upon information and belief, it is alleged that Det. Jonnalis was not a part of this conspiracy but, rather, committed perjury by fabricating the

Statements attributed to Plaintiff in his probable cause affidavit for his own reasons and personal gains.

15.    PDs Cook, Trawick, and Investigator Stack had actual knowledge of Plaintiff's life history due to Professor Gorman's extensive and dedicated work as his Mitigation Specialist.[1] This life history includes Plaintiff's being wrongfully and falsely accused of having a design to detonate a weapon of mass destruction at Gaffney High School in South Carolina by a group of girls who disliked him during his junior year. This incident ruined Plaintiff's life after being fresh off his second suicide attempt and continues to influence his life to this day. As such, the conspirators knew that Plaintiff would be especially susceptible to the malicious prosecution effected against him.

### Impossibility of Commission / Indifference of Authorities[2]

16.    As a Maximum Custody Inmate in jail, Plaintiff does not have access to blue ink pens, staplers, staples, cream of wheat, and sulfuric acid. Jail staff visually inspect all mail for contraband before it is sealed by the inmate and delivered to the mailroom. Lack of access to these materials and the visual inspection of Plaintiff's mail precluded him from making the "envelope" discovered by ASA Achille and its being placed into the internal mail system.

17.    Likewise, mailroom staff stamp all outgoing inmate mail to disclaim the speech it contains as that of the Sheriff's Office. This stamp was not present on the "envelope," thus indicating that it was not handled by the jail's mailroom staff. Plaintiff's DNA nor fingerprints were found on/in the envelope as well.

Page 9

18.    The "envelope" would have had to also bypass any and all screening and security [3] employed by the Broward County Courthouse and the State Attorney's Office in order to be delivered to the latter's mailroom. It would have then been handled by the Office's staff, sorted and delivered to ASA Achille's desk. No one admitted to placing the "envelope" on her desk despite such an admission not carrying culpability with it. [4]

19.    These facts indicate that the overwhelming likelihood is that the "envelope" entered the State Attorney's Office in the possession of someone who knew of its contents. The State Attorney's Office is not accessible by the public without invitation, thus causing the identity of the individual who introduced the "envelope" to be, in all likelihood, an employee of the Defendant.

20.    These facts and reasonable inferences are the product of the relatively small amount of records that Plaintiff has obtained through public records requests to the Broward Sheriff's Office and State Attorney's Office of Palm Beach County. [5]

21.    Having these facts in hand, Plaintiff has failed to obtain the assistance of any authority capable of investigation and acting upon Plaintiff's complaint of being maliciously prosecuted. The Sheriff's Office has engaged in a coverup of its misconduct and taken steps to prevent Plaintiff from obtaining the help of the public. The Defendant and his agents have, upon information and belief, also conducted a coverup. The highly inflammatory nature of ASA Achille's allegations and the can't-make-this-stuff-up nature of the true events that took place have precluded Plaintiff from obtaining the assistance of authorities.

COUNT I

INTERVENTION IN PENDING STATE COURT PROCEEDINGS

(i.e. MOTION TO DISQUALIFY PROSECUTORS)

42 U.S.C. §1983

22.     Plaintiff incorporates and realleges paragraphs 1-21 as if fully set forth herein.

23.     ASA Achille has developed a personal interest in the prosecution of Plaintiff, committed substantial misconduct in the course thereof, and there is a strong appearance of impropriety in her and her office's continuing to do so. The Defendant knows or should know that ASA Achille is conflicted and not competent to continue her prosecution as a matter of law, and his continued refusal to discontinue her participation in such has tainted the entirety of his office. They must be disqualified from continuing the prosecution against Plaintiff as a result.

Personal Interest

24.     ASA Achille's personal interest is three-fold: her participation in the above-described conspiracy to maliciously prosecute Plaintiff for a crime that he did not commit and in concert with agents of the Broward Sheriff's and Public Defender's Offices; the suit for damages that Plaintiff has brought in state court as a result of being incapable of obtaining the assistance of any authorities; and her personal animosity towards Plaintiff.

25.     In his action for damages, Plaintiff seeks compense against ASA Achille

for her committing the state law and constitutional torts of Defamation (Slander per se) and "Stigma-Plus," [6] respectively, by knowingly and willfully uttering false statements and having reckless disregard for the truth that Plaintiff did not commit the infamous crime of sending her fake anthrax on/about June 1, 2023. [7] This is a "bona fide civil action" [8] that will require ASA Achille to be involved in litigation with Plaintiff for the next several years and thus, requiring extensive attention away from her duties and resources to defend.

### Substantial Misconduct

26.    Achille's participation in the successful conspiracy to maliciously prosecute Plaintiff constitutes a substantial amount of misconduct requiring the disqualification of her and the Defendant's office from continuing its prosecution of Plaintiff. It is pled in the alternative that his demonstrating that a preponderance of the evidence indicates that any agent of the Defendant knowingly placed the envelope on ASA Achille's desk with knowledge of its contents also requires disqualification of the entirety of the Defendant's office.

27.    ASA Achille has committed several additional acts that, together, constitute substantial misconduct such as knowingly and willfully using her position as an ASA to further her personal interests at the expense and to the prejudice of Plaintiff, attempting to deprive Plaintiff of all contact with his court-appointed counsel, etc., and that these acts require the Defendant to disqualify the entirety of his office and ASA Achille from continuing their prosecution.

27.     ASA Achille and the Defendant have committed substantial misconduct through their legal agents, Stacey Blume and Christopher Sutter, by their knowingly and willfully engaging in bad-faith litigation to deprive Plaintiff of his ability to file papers as a pro se litigant in any case in the Seventeenth Judicial Circuit of Florida. This bad-faith litigation was, upon information and belief, conducted with extensive ex parte communications with the judge presiding over Plaintiff's state court damages suit, Jeffrey Richard Levenson, and that such litigation was the product of collusion with the trial court and the intent of severely restricting his ability to access the courts by violating his right to due process. These acts are imputed to Defendant by law.

## Strong Appearance of Impropriety

28.     The facts, as described above, and, namely, the successful con-spiracy to maliciously prosecute Plaintiff and the State's response or lack thereof, should cause the reasonable person who is informed as to all of the facts of this controversy to believe that the Defendant and his agents—including ASA Achille—are behaving or will be inclined to behave **especially** in-appropriately or wrongfully. The Defendant must disqualify the entirety of his office as [u]the public interest in the maintenance of the nation's courts as fair and impartial forums where neither bias nor prejudice rules" has been im-plicated and is at risk here.[10]

## INAPPLICABILITY OF YOUNGER ABSTENTION

29.     Plaintiff has attempted to raise the constitutional issue and defense

of prosecutorial disqualification through his court-appointed Counsel and they have so moved twice: (1) A hearing was had on October 27, 2023, as to a legally insufficient motion filed by counselor Michael Heise, alleging that ASA Achille's mere status as a victim of a crime purportedly committed by Plaintiff required her disqualification and that the same was true for Defendant's office; and [11] (2) on March 7, 2025, after Plaintiff's filing of his State court damages suit, but the unconstitutional sua sponte dismissal of his and counsel's failure/refusal to raise, prove, and argue the grounds set forth above rendered the hearing meaningless. [12]

30.    Plaintiff even attempted to obtain the substitution of counsel so as to raise this constitutional issue and defense with the state tribunal, but that hearing held on April 30, 2025, was little more than a pretext as Circuit Court Judge Martin S. Fein prejudged the issue and knowingly and falsely stating that he had read papers given to him to review in open court on the record. Plaintiff's papers contained crucial facts to support his motion.

## No Adequate Opportunity

31.    Florida law – i.e. Logan v. State, 846 So.2d 472 (Fla. 2003), its progeny, and related cases – is unambiguous in that criminal defendants whom are represented by an attorney will have virtually all of their pleadings filed in propria persona rendered a legal nullity. Plaintiff is forced to surrender one constitutional right in order to exercise another so as to be heard on this issue as he does not wish to proceed to trial without the assistance of counsel. [13] The Logan doctrine is a complete procedural bar.

## Great & Irreparable Harm

32.     ASA Achille's continuing to prosecute Plaintiff will result in great, immediate, and irreparable harm as she will, upon information and belief, attempt to use evidence she has fabricated against Plaintiff once again in order to convict him of a crime that he did not commit. This will take place at Plaintiff's trial beginning January 7, 2026, and such fabricated evidence will be incapable of being reviewed by an appellate court once it is admitted and incorporated into the record in the event of Plaintiff's being wrongfully committed.

33.     Upon information and belief, it is alleged that ASA Achille is in possession of sensitive and confidential privileged information regarding Plaintiff's case and defense that remained in the custody of Plaintiff's former PDs as the result of her agreeing to participate in the successful conspiracy to maliciously prosecute Plaintiff. Her receipt of such information was facilitated by PD Trawick and her possession and knowledge of such privileged materials places Plaintiff at a distinct disadvantage in defending himself at trial. ASA Achille's use of this information is completely extrinsic to the cold record to be reviewed by an appellate court and, thus, incapable of being corrected.

34.     The Courts of Florida and prosecutors of the Broward County State Attorney's Office have demonstrated a complete and utter disregard for Plaintiff's Due Process rights — including but not limited to a fair trial in a fair tribunal against unconflicted prosecutors — and they will continue such violations absent injunctive relief.

## RELIEF REQUESTED

WHEREFORE, based upon the foregoing, Plaintiff respectfully requests that this Honorable Court grant him the following relief:

I. Declare the _Logan_ doctrine's scheme of forcing criminal defendants to surrender one right in order to exercise another unconstitutional.

II. Issue an injunction ordering the Defendant to:

A. Disqualify and recuse ASA Achille from continuing her prosecution of Plaintiff.

B. Disqualify and recuse the entirety of the Broward County State Attorney's Office from continuing its prosecution of Plaintiff and request that Governor Ron DeSantis or his successor to assign the case to another State Attorney pursuant to §27.14, Fla. Stat.

III. Award all applicable costs, fees, and any other relief this Court deems just.

Respectfully submitted,

Daniel Adams

Daniel Adams #552000205
Broward County Main Jail
P.O. Box 9356
Fort Lauderdale, FL 33310

## FOOTNOTES

1   My decision to do this was not without remorse and anything but easy. A declaration that I will file later will evidence such.

2   The reality of what it would have taken for me to commit the acts that ASA Achille has falsely accused me of is so improbable as to be impossible.

3   ASA Achille has referenced these measures in open court. The U.S. Marshals screen this Honorable Court's mail, so it is likely that the Sheriff's Office screens the Broward Courthouse's incoming mail.

4   The typical mailroom staff member would've been incapable of knowing the contents of the "envelope" without opening it.

5   The almost entirety of all significant public records concerning the fake anthrax attack itself may be found in the complaint and state's filing on/about April 1, 2025, in _Adams v. Office of the State Attorney, Fifteenth Judicial Circuit, No. 2024-CA-005792, Fla. 15th Cir. Ct._

6   See e.g. _Marrero v. City of Hialeah, 625 F.2d 499, 515 (11th Cir. 1980)._

7   I had planned to conduct a round of discovery prior to amending the complaint and introducing my malicious prosecution, etc. claims. More fool I for believing that I would receive anything approaching due process and fairplay.

8  "[A] bona fide civil action alleging bad faith in the performance of official duties" gives rise to due process concerns because of "[t]he threat posed to a prosecutor's interests in his personal and professional reputation." *United States v. Heldt, 668 F.2d 1238, 1275 (D.C. Cir. 1980).*

9  See *Black's Law Dictionary, 122.-23 (11th ed. 2019).*

10  *Pierce v. United States, 86 F.2d 949, 953 (6th Cir. 1936).*

11  I had not learned the law as to the disqualification of prosecutors as of that time. Mr. Heise moved for disqualification on his own volition as I was unaware that was even possible - making allegations of "forum shopping" and more besides especially upsetting given my actual innocence of the June 1, 2023, fake anthrax attack.

12  I was promised that these grounds would be raised and argued on March 5, 2025.

13  "[W]e find it intolerable that one constitutional right should have to be sur-rendered in order to assert another. *Simmons v. United States, 390 U.S. 377, 398 (1968)*

14  "[W]e have found a sufficient imminence of of future harm [for the purposes of Article III standing] ... [where] the plaintiff has alleged with particularity that a future injury would likely occur in substantially the same manner as the previous injury." *Elend v. Basham, 471 F.3d 1199, 1208 (11th Cir. 2006).*

Page 18

15 "Disqualification is a prophylactic remedy for *likely* future prejudice."
*Blake v. State,* 180 So.3d 89, 101 (Fla. 2014)(emphasis added). See also
*Bogle v. State,* 655 So.2d 1103, 1106 (Fla. 1995)(stating that "the ap-
pearance of impropriety created by certain situations may demand dis-
qualification ... [and that] such situations [are evaluated] on a *case-by-
case basis* "(emphasis added).


       Pursuant to 28 U.S.C. §1746, I swear under penalty of perjury that
the foregoing is true and correct. Executed in Fort Lauderdale, FL this November
13, 2025.


                              Daniel Adams
                              Daniel Thomas Adams

# APPENDIX B

## Memorandum of Law

\* Law Library Staff
failed to produce Suf-
ficient copies for me.

Motion for Stay Of State Proceedings



FIRST-CLASS

Daniel Adams #552000205
Broward County Main Jail
P.O. Box 9356
Fort Lauderdale, FL 33310

United States Courthouse
Chambers of Judge Ed Artar
400 North Miami Avenue
Miami, FL 33128